IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HUBERT L. MICHAEL, | : | No. 3:96-CV-01554 |
| | : | |
| Petitioner | : | (Judge Jones) |
| | : | |
| v. | : | |
| | : | |
| JOHN E. WETZEL, Secretary, | : | THIS IS A CAPITAL CASE |
| Pennsylvania Department of | : | |
| Corrections; LOUIS FOLINO, | : | |
| Superintendent of the State Correctional | : | |
| Institution at Greene; and MARIROSA | : | |
| LAMAS, Superintendent of the State | : | |
| Correctional Institution at Rockview, | : | |
| | : | |
| Respondents | : | |

## MEMORANDUM

**November 7, 2012**

Before the Court is a motion to reopen these habeas proceedings under

Federal Rule of Civil Procedure 60(b)(6), filed on behalf of Petitioner Hubert L.

Michael, a death-sentenced prisoner in the custody of the Pennsylvania Department

of Corrections.  (Doc. 195.)  For the reasons set forth below, the Court will deny

the motion because it, in fact, constitutes a second or successive habeas corpus

application that has been brought without adherence to AEDPA's mandates, and

thus the Court lacks jurisdiction to consider it.

## I.     BACKGROUND

The factual background and procedural history of this case are well known to the parties, and thus need not be discussed at length.  What is germane to the Court's discussion here is Petitioner's history of vacillation with regard to his desire to pursue his appeals from his criminal conviction and death sentence.

In 1994, Petitioner pleaded guilty to first-degree murder and kidnaping in the Court of Common Pleas of York County, Pennsylvania.  After Petitioner stipulated that there were two aggravating circumstances and no mitigating circumstances, the trial court sentenced Petitioner to death.  On automatic direct appeal to the Pennsylvania Supreme Court, Petitioner asked that his conviction and sentence be affirmed.  After conducting an independent review of the sufficiency of the evidence, the Pennsylvania Supreme Court affirmed Petitioner's conviction and sentence.  *Commonwealth v. Michael*, 674 A.2d 1044 (Pa. 1996).

In 1996, Petitioner authorized the filing of a counseled petition for post-conviction collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. ANN. §§ 9541-9546.  Petitioner's then-counsel, the Federal Community Defender Office, Capital Habeas Unit ("FCDO"), also filed

for a stay of execution in this Court.[1]  (Doc. 1.)  On August 22, 1996, the Court

issued an Order granting a stay of execution and suspending this habeas case

pending the PCRA proceedings.  (Doc. 4.)

On January 2, 2001, after Petitioner's state court remedies were exhausted,

*see Commonwealth v. Michael*, 755 A.2d 1274 (Pa. 2000), Petitioner submitted a

letter to this Court requesting that no appeals be filed on his behalf.  (Doc. 56).  In

response, Petitioner's FCDO counsel argued that Petitioner was not competent to

make such a request.  (*See* Doc. 57.)  The Court appointed psychiatrist Robert

Wettstein, M.D., to evaluate Petitioner's competency.  (*See* Doc. 80.)  The Court

also appointed another attorney, Joseph Cosgrove, Esquire, to represent Petitioner

due to the potential conflict of interest with the FCDO.[2]  (*See* Doc. 102.)  On

September 26, 2001, the Court held an evidentiary hearing and conducted a

colloquy with Petitioner regarding his waiver.  (*See* Doc. 137.)  As described by

the Court in its March 10, 2004 memorandum and order granting Petitioner's

motion to dismiss his habeas petition:

---

[1] This case was previously assigned to the Honorable Thomas I. Vanaskie, formerly with this Court and currently sitting on the United States Court of Appeals for the Third Circuit.  By verbal order dated October 25, 2012, the case was reassigned to the undersigned.

[2] In June 2001, although the competency issues had not yet been resolved, the FCDO filed a habeas petition on behalf of Petitioner, raising, *inter alia*, claims of ineffective assistance of counsel.  (Doc. 78.)

The hearing began with this Court's colloquy of Mr. Michael. His responses to the Court's questions revealed a rational understanding of each inquiry. He acknowledged his right to proceed with this case, and that a possible outcome would be a new trial that could result in an acquittal or a sentence other than death. He also acknowledged that termination of this litigation would provide no assurance of the prompt execution of the death penalty, and that it may take years before he would be executed in any event. He also understood that a moratorium on the death penalty could be imposed, placing his sentence in limbo for a long time. He also understood that, in light of the one-year statute of limitations on habeas corpus cases, a change of mind occurring in the future with respect to pursuit of a collateral attack on his conviction may be time-barred. He confirmed his desire to not be represented by the [FCDO]. He reiterated that he wanted this proceeding terminated. In response to the question as to why he wanted to dismiss counsel and abandon any challenge to his conviction, he explained that he was not opposed to the death penalty. In response to the court's inquiry concerning his written statement to the Pennsylvania Supreme Court that he wanted a decision on the appeal from the denial of his PCRA petition, Mr. Michael said that it was simply his intention to expedite the process.

(Doc. 137 at 24) (citations omitted) (emphasis added).

After counsel submitted post-hearing briefing, the Court received several letters from Petitioner regarding his competency to waive his appeals. (*See* Docs. 128, 130, 132-36.) Several of these letters directly advised the Court of Petitioner's desire to waive his appeal regarding his death sentence and to dismiss his counsel. (*See* Doc. 133, 135.)

On March 10, 2004, the Court issued an Order granting Petitioner's motion to dismiss his habeas petition, dismissing all counsel on behalf of Petitioner, and

4

closing the case.  (Doc. 137.)  In that Order, the Court also vacated the stay of

execution imposed by the Court's August 22, 1996 Order.  (*Id*.)  On April 8, 2004,

the FCDO filed a notice of appeal to the United States Court of Appeals for the

Third Circuit on behalf of Petitioner.  (*See* Doc. 138.)

    Before the Third Circuit Court, Petitioner's apparent conflict with his

counsel over his desire to proceed with appeals continued.  On April 14, 2004,

Petitioner submitted a letter to the Third Circuit Court indicating that he did not

wish to proceed with his appeal.  *See Michael v. Horn*, 476 F. App'x 277, 278 (3d

Cir. 2011).  The Commonwealth subsequently filed a motion to dismiss the appeal.

*See id.*  The Third Circuit Court granted the motion to dismiss, but withheld

judgment for ten days to give Petitioner an opportunity to decide whether he

wished to proceed with the appeal.  *See id.*  On May 5, 2004, Petitioner stated that

he wished to proceed with the appeal.  *See id.*  The Third Circuit Court appointed

Mr. Cosgrove and ordered briefing on whether the Court should grant a certificate

of appealability.  *Id.*  After oral argument, the Third Circuit Court granted a

certificate of appealability on the issue of whether this Court violated 21 U.S.C.

848(q)(4)(B)[3] in dismissing Petitioner's counsel and, if so, whether the error was

_____

[3] Section 848(q)(4)(B) was subsequently "recodified without substantive change at 18
U.S.C. § 3599(a)(2)."  *Michael*, 476 F. App'x at 278 n.1.

harmless.

In the months following the Third Circuit Court's granting of the certificate of appealability, Petitioner again vacillated on whether to proceed with his appeal. *See id.*  In light of Petitioner's vacillation, Dr. Wettstein opined that further evaluation of Petitioner's competency may be necessary.  *See id*.  In August 2006, the Third Circuit Court remanded to this Court to again determine Petitioner's competency.  *Id*.  Further, the Third Circuit Court instructed this Court that if the Court were to find Petitioner competent, it should ask him the following question: "Do you wish the Court of Appeals to dismiss the appeal taken in your name from the order entered in this Court dismissing the habeas corpus petition filed in your case?"  *Michael v. Horn*, 459 F.3d 411, 420-21 (3d Cir. 2006).

After the case was remanded, Petitioner submitted several letters to the Court, through counsel, indicating his desire to pursue his appeal and to have Mr. Cosgrove represent him.  (Docs. 172, 174, 180, 187.)  Dr. Wettstein re-evaluated Petitioner, concluding that Petitioner had "the mental capacity to understand the choice between life and death and can make a knowing and intelligent decision to pursue his further legal remedies."  *See Michael*, 476 F. App'x at 278.  Further, at the video conference held by this Court on December 10, 2007, Petitioner, present with his counsel, answered "no" in response to the question of whether he wished

6

the Court of Appeals to dismiss his appeal.  (*See* Doc. 189.)  On December 11,

2007, this Court found Petitioner competent and referred the matter back to the

Third Circuit Court.  (*Id*.)

After the matter returned to the Third Circuit Court, Mr. Cosgrove was

appointed to serve as a Judge of the Court of Common Pleas of Luzerne County,

requiring him to cease practicing law.  (Doc. 196 at 27.)  Therefore, the Third

Circuit Court allowed Mr. Cosgrove to withdraw on June 18, 2010, and appointed

Ronald C. Travis, Esquire, Petitioner's current counsel.  Mr. Travis maintains that

throughout his representation of Petitioner, Petitioner "has remained firm in his

desire to litigate his habeas claims."  (*Id*.)

After the parties submitted new briefs, on August 10, 2011, the Third Circuit

Court affirmed this Court's original dismissal of the habeas petition and counsel.

*Michael*, 476 F. App'x at 281.  Petitioner filed petition for hearing, which was

denied by the Third Circuit Court on December 8, 2011.  (*See* Doc. 200 at 119.)

The United States Supreme Court denied Petitioner's request for certiorari review

on June 11, 2012, *Michael v. Wetzel*, 132 S. Ct. 2746 (2012), and denied rehearing

on August 13, 2012, ___ S. Ct. ___, 2012 WL 3263556.

On September 6, 2012, the FCDO filed a motion in the Third Circuit court

requesting appointment of counsel on behalf of Petitioner.  *See In re Michael*, No.

12-8087 (3d Cir. 2012).  On September 14, 2012, the Third Circuit Court granted

that motion.  (*See id*.)  After the Court granted Petitioner's motion, FCDO counsel

began an investigation for clemency proceedings.  (Doc. 196 at 30.)

On October 24, 2012, Petitioner filed the instant motion to reopen this case

under Federal Rule of Civil Procedure 60(b)(6), in order to reactivate his habeas

corpus proceedings.  (Doc. 195.)  After the Court directed expedited briefing in

light of Petitioner's impending execution date, Respondents filed a response to the

motion on November 5, 2012.  (Doc. 213.)  Petitioner has submitted a reply.  (Doc.

216.)  Thus, the instant motion is ripe for disposition.

## II.   DISCUSSION

Rule 60(b) provides, in pertinent part:

> On motion and just terms, the court may relieve a party or its legal
> representative from a final judgment, order, or proceeding for the
> following reasons:
>
> > (1) mistake, inadvertence, surprise, or excusable neglect;
> > (2) newly discovered evidence that, with reasonable
> > diligence, could not have been discovered in time to move
> > for a new trial under Rule 59(b);
> > (3) fraud (whether previously called intrinsic or extrinsic),
> > misrepresentation, or misconduct by an opposing party;
> > (4) the judgment is void;
> > (5) the judgment has been satisfied, released, or discharged;
> > it is based on an earlier judgment that has been reversed or
> > vacated; or applying it prospectively is no longer equitable;
> > or
> > (6) any other reason that justifies relief.

8

Fed. R. Civ. P. 60(b).  A motion under Rule 60(b) must be made within a

reasonable time, and for reasons (1), (2), and (3), no more than a year after the

entry of judgment.  Fed. R. Civ. P. 60(c)(1).  Further, the decision to grant or deny

relief pursuant to Rule 60(b) lies in the sound discretion of the trial court guided by

accepted legal principles applied in light of all relevant circumstances.  *Ross v.

Meagan*, 638 F.2d 646, 648 (3d Cir. 1981).

 In *Gonzalez v. Crosby*, 545 U.S. 524 (2005), the United States Supreme

Court addressed the issue of how to differentiate between true and valid Rule 60(b)

motions and second or successive habeas petitions which are subject to

gatekeeping provisions under the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"), at 28 U.S.C. § 2244(b).[4]  The Court considered when a Rule

60(b) motion advances a "claim" that essentially would deem the motion a second

---

 [4] As described by the United States Supreme Court in *Gonzalez v. Crosby*, 545 U.S. 524, 529-30 (2005), this provision of AEDPA, located at 28 U.S.C. § 2244(b)(1)-(3), imposes the following three requirements on second or successive habeas petitions:

> First, any claim that has already been adjudicated in a previous petition must be dismissed.  § 2244(b)(1).  Second, any claim that has *not* already been adjudicated must be dismissed unless it relies on either a new and retroactive rule of constitutional law or new facts showing a high probability of actual innocence.  § 2244(b)(2).  Third, before the district court may accept a successive petition for filing, the court of appeals must determine that it presents a claim not previously raised that is sufficient to meet § 2244(b)(2)'s new rule or actual-innocence provisions.  § 2244(b)(3).

*Id*. (emphasis in original).

or successive habeas petition subject to pre-certification under 28 U.S.C. § 2244

rather than a motion seeking relief from a final judgment as defined in Rule 60(b).

The Court stated:

> In most cases, determining whether a Rule 60(b) motion advances one
> or more "claims" will be relatively simple.  A motion that seeks to add
> a new ground for relief . . . will of course qualify.  A motion can also
> be said to bring a "claim" if it attacks the federal court's previous
> resolution of a claim *on the merits*, since alleging that the court erred
> in denying habeas relief on the merits is effectively indistinguishable
> from alleging that the movant is, under the substantive provisions of the
> statutes, entitled to habeas relief.  That is not the case, however,
> when a Rule 60(b) motion attacks, not the substance of the federal
> court's resolution of a claim on the merits, but some defect in the
> integrity of the federal habeas proceedings.

*Gonzalez*, 545 U.S. at 532 (emphasis in original).  Expanding on a "defect in the

integrity of the federal habeas proceedings," the Court stated:

> Fraud on the federal habeas court is one example of such a defect.  *See*
> *generally Rodriguez v. Mitchell*, 252 F.3d 191, 199 (C.A.2 2001) (a
> witness's allegedly fraudulent basis for refusing to appear at a federal
> habeas hearing "relate[d] to the integrity of the federal habeas
> proceeding, not the integrity of the state criminal trial").  We note that
> an attack based on the movant's own conduct, or his habeas counsel's
> omissions, *see, e.g.*, *supra*, at 2647, ordinarily does not go to the
> integrity of the proceedings, but in effect asks for a second chance to
> have the merits determined favorably.

*Id*. at 532 n.5.  The Court also explained that there is no new habeas claim "when

[a petitioner] merely asserts that a previous ruling which precluded a merits

determination was in error - for example, a denial for such reasons as failure to

exhaust, procedural default, or statute-of-limitations bar." *Id*. at 532 n.4.

In the instant motion, Petitioner moves for relief from Court's March 10, 2004 judgment under Rule 60(b) based on his assertion that when he was permitted to waive his habeas claims at that time, the Court dismissed his habeas case without addressing his claims on their merits, and thus, now that he wants to again pursue an appeal from his conviction and death sentence, merits review is necessary in order to avoid injustice.  In the brief in opposition, Respondents argue that Petitioner is not entitled to relief under Rule 60(b) because: (1) Petitioner's motion is not properly brought under Rule 60(b) because it is based on Petitioner's own conduct, and thus should be considered a second or successive habeas petition subject to the gatekeeping requirements of 28 U.S.C. § 2244, and (2) even if considered under Rule 60(b), the motion is untimely.  For purposes of disposition of the instant motion, the Court will address Respondents' arguments in turn.  We ultimately conclude that the Petitioner's motion is timely but that, in any event, he has failed to establish grounds for Rule 60(b) relief.

## A.    Second or Successive Petitions

*Gonzalez*, *supra*, distinguished between true Rule 60(b) motions and second or successive habeas petitions disguised as Rule 60(b) motions and offered discussion and guidance for district courts in determining which of the two it is

presented with.  The Court held that Rule 60(b) motions are viable in habeas cases where the motion does not ask for a second chance to have the merits determined favorably but instead challenges some aspect of the "integrity  of the federal habeas proceedings." *Gonzalez*, 545 U.S. at 532.  Expounding upon this guidance, the Sixth Circuit Court of Appeals in *Post v. Bradshaw*, 422 F.3d 419 (6th Cir. 2005), articulated that a Rule 60(b) motion in a habeas proceeding is not a true Rule 60(b) motion where a petitioner is simply "'seek[ing] vindication of' or 'advanc[ing]' a claim by taking steps that lead inexorably to a merits-based attack on the prior dismissal of his habeas petition." *Id.* at 424-25 (quoting *Gonzalez*, 545 U.S. at 530-32).  Of particular relevance to the matter *sub judice*, and as above noted, the *Gonzalez* Court specified that where a Rule 60(b) motion is premised upon the petitioner's own conduct precluding merits review of his claims, a district court should ordinarily deny the motion.  *Id.* at 532 n.5.

The Petitioner cites to numerous cases from the federal Circuit Courts for the proposition that where a Rule 60(b) motion challenges a discrete, nonmerits aspect of the first habeas proceeding, it is not a successive habeas petition and thus a district court should generally entertain the filing.  (Doc. 196, pp. 74-75 (citing *United States v. Andrews*, 463 F. App'x 169 (3d Cir. 2012); *Thompson v. Bell*, 580 F.3d 423 (6th Cir. 2009); *Ruiz v. Quarterman*, 504 F.3d 523 (5th Cir. 2007)).  In

12

each of these cases, true to the Petitioner's argument, the Courts of Appeals reversed the district courts' findings that the Rule 60(b) motion was a disguised second or successive habeas petition.  Critically, however, the underlying district court decisions to dismiss the habeas petitions in those cases were cabined to discrete technical or procedural bars which automatically precluded merits review of the case.  *See Andrews*, 463 F. App'x at 173 (first habeas petition dismissed as time-barred); *Thompson*, 580 F.3d at 442-44 (four ineffective assistance claims in first habeas petition dismissed for procedural default); *Ruiz*, 504 F.3d at 526 (first habeas petition dismissed for failure to exhaust and procedural default).  Not one of the cases supplied by Petitioner, and indeed none discovered by the Court's independent research, reveals a petitioner who knowingly and voluntarily withdrew his habeas petition and waived his federal habeas claims, resulting in closure of the case.

The Petitioner's plight here is not the result of the inflexible operation of a procedural or technical bar as was the case in *Andrews*, *Thompson*, and *Ruiz*.  The Petitioner here moved to withdraw his claims and dismiss his habeas petition on his own initiative after an extensive evidentiary hearing, competency evaluation, and comprehensive colloquy with Judge Vanaskie.  (Doc. 137 at 24).  Only after these exhaustive proceedings and much consideration did Judge Vanaskie permit

the Petitioner to voluntarily withdraw his habeas claims and dismiss his petition.

The case before this Court is thus distinguishable from *Andrews*, *Thompson*, and *Ruiz*, where the operation of automatic defaults and procedural technicalities entirely precluded merits review of the petitioners' claims. Instead, Petitioner's quandary here falls squarely within the *Gonzalez* Court's holding that "an attack based on the movant's own conduct . . . in effect asks for a second chance to have the merits determined favorably" and is thus not the proper subject of a Rule 60(b) motion. *Gonzalez*, 545 U.S. at 532 n.5. Vindication of the Petitioner's claims was not foreclosed by operation of some time limitation, procedural default, or other technical bar, but instead by Petitioner's unilateral and voluntary decision to withdraw his claims and accede to his death sentence. While Petitioner has vacillated between an interest in pursuing his claims and an interest in accelerating his execution with some frequency, ultimately, he knowingly and voluntarily waived federal court collateral review of his sentence and, at his sole request, his habeas claims were dismissed. We cannot but conclude, then, that the Petitioner's plight is a product of his own conduct and, pursuant to *Gonzalez*, not the proper subject of a Rule 60(b) motion to vacate a final judgment.


### B.    Timeliness and Extraordinary Circumstances

14

Respondents also submit that even if Petitioner's contentions are properly considered under Rule 60(b), Petitioner's motion is untimely.  Petitioner brings his motion pursuant to Rule 60(b)(6), which permits a party to seek relief from a final judgment or order for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  A motion made under Rule 60(b)(6) "must be made within a reasonable time. Fed. R. Civ. P. 60(c).  Petitioner contends that although the original judgment was entered more than eight (8) years ago, his appeals were not exhausted until the Supreme Court denied rehearing on August 13, 2012, and thus his motion filed less than three (3) months thereafter was filed "within a reasonable time."

Petitioner is correct that the appeals period divested this Court of jurisdiction.  *See Thompson*, 580 F.3d at 444 (citing *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 327 (6th Cir. 1993); *see also Killeen v. Travelers Ins. Co.*, 721 F.2d 87, 90 n.7 (3d Cir. 1983) ("The notice of appeal divested the district court of jurisdiction, and therefore the district court could not properly decide the Rule 60(b) motion).  Thus, even if Petitioner had filed the instant Rule 60(b) motion closer in time to the final judgment he now challenges, we nonetheless would have lacked jurisdiction to entertain it given the fact of his appeals.  Accordingly, we conclude that the three month period between Petitioner's final appeal to the Supreme Court, denied on August 13, 2012, and the October 24, 2012 filing of the

instant motion constitutes a "reasonable time" as contemplated by Rule 60(c).

However, as Respondents observe, these timeliness criteria are ultimately supplemented by and subject to the requirement that a motion brought pursuant to Rule 60(b)(6) must show "extraordinary circumstances justifying the reopening of a final judgment." *Gonzalez*, 545 U.S. at 535.  It is hardly extraordinary that Petitioner, upon acknowledging the reality of an impending death sentence to which he had once acceded, has now changed his mind and seeks to vacate that sentence.  Changing one's mind can hardly be considered an "extraordinary circumstance."  We thus conclude that a Rule 60(b) motion is improper for this additional reason.

## IV.   CONCLUSION

It is true that Rule 60(b) gives this Court "a grand reservoir of equitable power to do justice in a particular case." *Radack v. Norwegian Am. Line Agency, Inc.*, 318 F.2d 538, 542 (2d Cir. 1963).  It does not, however, empower the Court to extend the law beyond reason.  This Court is disinclined to exercise its reservoir of discretion simply because the Petitioner has now changed his mind and hopes to alter his fate.  The case law simply does not support such a result.  Indeed, to grant the relief requested by Petitioner would make this case a monumental example of the seemingly endless and oft criticized federal habeas practice. Over nineteen

16

years after the heinous murder that Petitioner has admitted committing, it is time to draw this affair to a close.

In this Court's view, then, and for all of the reasons articulated herein, the predicate of this case and the premise of Petitioner's arguments demonstrate that this matter is not the proper subject of a Rule 60(b) motion.  Consistent with our analysis herein, and guided by the Supreme Court's decision in *Gonzalez v. Crosby*, 545 U.S. 524 (2005) and the gatekeeping requirements of § 2244, we conclude that we lack jurisdiction to entertain the Petitioner's Rule 60(b) motion and will accordingly deny the motion.

An appropriate Order shall be entered.